**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEATHER TENTONI, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 08-1976 (WHW) |
| VINCENT E. JEFFERS and CON-WAY FREIGHT, INC., SAINT CLARE'S HEALTH SYSTEM MOBILE INTENSIVE CARE UNIT, DENNIS KRUK and KEVIN WALTY | |
| Defendants, and | |
| VINCENT E. JEFFERS and CON-WAY TRANSPORTATION SERVICES, INC. | |
| Third-Party Plaintiffs, v. | |
| SAINT CLARE'S  HEALTH SYSTEM MOBILE INTENSIVE CARE UNIT, DENNIS KRUK and KEVIN WALTY | |
| Third-Party Defendants. | |

**Walls, Senior District Judge**

Defendants/third-party defendants Saint Clare's Health System Mobile Intensive Care

Unit ("St. Clare's"), Dennis Kruk and Kevin Walty move for summary judgment against plaintiff

Heather Tentoni and third-party plaintiffs Vincent E. Jeffers and Con-Way Transportation

**NOT FOR PUBLICATION**

Services, Inc. ("Con-Way"). The plaintiff and third-party plaintiffs ("plaintiffs") oppose

defendants' motion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions

are decided without oral argument. Defendants' motion for summary judgment is granted in part

and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 20, 2005, plaintiff Heather Tentoni was driving on Route 287 South when

she was involved in a collision with a tractor trailer driven by Vincent Jeffers and owned by

Con-Way. The cause of the accident is disputed. Tentoni's vehicle was dragged under the

tractor trailer, dislodged, and came to a stop with two wheels on the roadway and two wheels on

the center concrete median. (St. Clare's Ex. G, N.J. Police Accident Report.) Police were the

first uniformed responders to the scene. Two EMTs, Ryan Tierney and Anthony Detrolio, were

the first medical emergency personnel to arrive. (St. Clare's Ex. K, EMS report.) They arrived

in an ambulance. The EMTs performed a "rapid trauma assessment," and Tentoni was removed

from the vehicle using a cervical collar and longboard. (St. Clare's Ex. U, Tierney Dep. pp.

27:15-28:15.)

Paramedics Dennis Kruk and Kevin Walty arrived a few minutes later in a specially

equipped Saint Clare's Mobile Intensive Care Unit (MICU) SUV. (St. Clare's Ex. M, MICU

Report.) Paramedics are more advanced in their training and experience than EMTs. They

provide "advanced life support" (ALS) services,[1] whereas EMTs provide "basic life support"

---

[1] "Advanced life support" means an advanced level of pre-hospital, inter-hospital, and emergency service care which includes basic life support functions, cardiac monitoring, cardiac defibrillation, telemetered electrocardiography, administration of anti-arrhythmic agents, intravenous therapy, administration of specific medications, drugs and solutions, use of adjunctive ventilation devices, trauma care and other techniques and procedures authorized in writing by the commissioner. N.J.S.A. 26:2K-7(a).

**NOT FOR PUBLICATION**

(BLS) services.[2]  Tentoni was already on the backboard when the paramedics arrived, and the

EMTs placed her on the stretcher for movement towards the ambulance.  As Tentoni was being

moved, debris in the roadway caused the stretcher to tip to one side and she fell to the ground.

Tentoni sustained severe injuries as a result of the car accident, the stretcher accident, or

both.  There was testimony from several witnesses that Tentoni had lacerations to her head, face

and nose, and that she was bleeding heavily.  (St. Clare's Ex. P, Villalta-Moran Dep. pp. 48:9-

49:10; St. Clare's Ex. U, Tierney Dep. p. 22:12-15; Con-Way Ex. E, Salter Dep. pp. 35:9-36:25.)

It is disputed whether Tentoni's face hit the ground when she fell off of the tipped stretcher.

EMT Tierney testified that he caught her before she hit the ground.  (St. Clare's Ex. U, Tierney

Dep. p. 46:4-6.)  However, there is substantial contradictory evidence indicating that Tentoni fell

face-first into the pavement, and was unable to brace herself as a result of being strapped to the

longboard.  (St. Clare's Ex. G, N.J. Police Accident Report; St. Clare's Exhibit Q, Williams Dep.

p. 36:10-13; St. Clare's Ex. P, Villalta-Moran Dep. pp. 26:12-27:10; St. Clare's Ex. V, Salter

Dep. pp. 88:20-89:5; Con-way Ex. I, Ferroni Dep. pp. 12:24-13:6.)  Ms. Tentoni alleges that her

cumulative injuries included a nasal fracture, traumatic brain injury, scalp laceration, multiple

facial lacerations and post-concussive syndrome.  (Pl. Am. Compl. ¶ 14.)  She also alleges that

she continues to suffer from reduced sensations of taste and smell. (Id.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c)(2).  A factual dispute between the parties will not defeat a motion for

summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380

---

[2]  "Basic life support" means a basic level of pre-hospital care which includes patient stabilization, airway clearance, cardiopulmonary resuscitation, hemorrhage control, initial wound care and fracture stabilization and other techniques and procedures authorized by the commissioner.  N.J.S.A. 26:2K-21(b).

**NOT FOR PUBLICATION**

(2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is

genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under

the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The

moving party must show that the non-moving party has failed to "set forth," by affidavits or

otherwise, "specific facts showing that there is a genuine issue for trial."  See Beard v. Banks,

548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts" in question.

Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986)).  At the summary judgment stage, the court's function is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue of fact

for trial.  See Anderson, 477 U.S. at 249.  In so doing, the court must construe the facts and

interferences in the light most favorable to the non-moving party.  Curley v. Klem, 298 F.3d 271,

277 (3d Cir. 2002).  To survive a motion for summary judgment, a non-movant must present

more than a mere "scintilla of evidence" in his favor.  Woloszyn v. Cnty. of Lawrence, 396 F.3d

314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine

issue for trial.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

## DISCUSSION

### I.      Affidavit of Merit and Expert Testimony

Plaintiffs put forth two theories of liability as to St. Clare's and the paramedics.  First,

plaintiffs argue that the paramedics actively participated in moving the stretcher.  (Pl. Am.

Compl. ¶ 19; Third Party Compl. ¶¶ 18-19.)  Alternatively, plaintiffs argue that, by virtue of their

4

**NOT FOR PUBLICATION**

higher rank and superior education and training, the paramedics were responsible for supervising

the EMTs.  (Id.)  Hence, even if they were not directly involved with transporting Tentoni on the

stretcher, they negligently supervised the EMTs in doing so.  As to the first claim, defendants

counter that they were both engaged in other duties at the time and did not participate in moving

the stretcher.  (see additional discussion infra.)  As to the second, they assert that although

paramedics provide a higher level of care than EMTs generally, EMTs are responsible for

transportation of the patient.  At the time of the stretcher accident, the paramedics were doing

their ALS duties and the EMTs were doing their BLS duties.  The defendants argue that there is

no clear rule or law dictating the chain-of-command between paramedics and EMTs at an

accident scene.  Hence, expert testimony would be required on the standard of care in order for a

jury to decide whether the paramedics were responsible for supervising the EMTs, and no expert

report has been submitted.  However, the defendants are putting the cart before the horse,

because if expert testimony is required in this case than an affidavit of merit should have been

filed.

> The Affidavit of Merit Statute, N.J.S.A. 2A:53A-27, requires, in pertinent part, that:
>
> In any action for damages for personal injuries, wrongful death or property
> damage resulting from an alleged act of malpractice or negligence by a licensed
> person in his profession or occupation, the plaintiff shall, within 60 days
> following the date of filing of the answer to the complaint by the defendant,
> provide each defendant with an affidavit of an appropriate licensed person that
> there exists a reasonable probability that the care, skill or knowledge exercised or
> exhibited in the treatment, practice or work that is the subject of the complaint,
> fell outside acceptable professional or occupational standards or treatment
> practices.[3]

A "licensed person" is defined as a licensed accountant, architect, attorney, dentist, engineer,

physician, podiatrist, chiropractor, registered nurse or health care facility.  N.J.S.A. 2A:53A-26.

---

[3] The Third Circuit has concluded "that the New Jersey affidavit of merit statute is substantive state law that must be applied by federal courts sitting in diversity."  Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000).

**NOT FOR PUBLICATION**

Failure to provide an affidavit results in dismissal of the complaint. N.J.S.A. 2A:53A-29; Couri

v. Gardner, 173 N.J. 328, 333 (2002). A dismissal under the statute is "with prejudice," and

"such a dismissal 'concludes the rights of the parties as if the suit had been prosecuted to final

adjudication adverse to the plaintiff.'" Cornblatt v. Barow, 153 N.J. 218, 243 (1998) (citation

omitted).

The Court finds that the Affidavit of Merit Statute applies to this cause of action because

it is an action for personal injuries (Pl. Am. Compl. ¶¶ 14-18) resulting from an alleged act of

negligence. Tentoni alleges that she was injured because St. Clare's paramedics negligently

transported her on the stretcher, or negligently supervised the EMTs in doing so, and "failed to

use their training and skill properly." (Pl. Am. Compl. ¶ 25). St. Clare's is a hospital and a

"licensed person" under the statute as a "health care facility." See N.J.S.A. 2A:53A-26.

The individual paramedics are employees of St. Clare's. An affidavit of merit should

have been filed as to the paramedic defendants as well, even if they are not "licensed persons"

under the statute. "Because of the doctrine of respondeat superior, an affidavit must also be

provided where a negligent act committed by an unlicensed person in the course of his

employment may be imputed to a licensed person." Martin v. Perinni Corp., 37 F.Supp.2d 362,

365 (D.N.J. 1999); see also Burns v. Chubb Ins. Co., 2007 WL 1484480, at *6 (App. Div. May

23, 2007); Bonnieview Homeowners' Assoc. v. Woodmont Builders, LLC, No. 03-4317, 2005

WL 2469665, at *3 (D.N.J. October 6, 2005).

The parties' dispute centers upon whether expert testimony is required on the standard of

care. Ordinarily, the "standard of practice to which [the defendant] failed to adhere must be

established by expert testimony," because a jury generally lacks the "requisite special

knowledge, technical training and background to be able to determine the applicable standard of

**NOT FOR PUBLICATION**

care without the assistance of an expert." Sanzari v. Rosenfeld, 34 N.J. 128, 134-135 (1961). In

a case such as this, the Affidavit of Merit Statute requires that "the person executing the affidavit

shall be licensed in this or any other state; have particular expertise in the general area or

specialty involved in the action, as evidenced by board certification or by devotion of the

person's practice substantially to the general area or specialty involved in the action for a period

of at least five years." N.J.S.A. 2A:53A-27. However, "[t]he doctrine of common knowledge

permits exception to the general rule; when it is applied, expert testimony is not needed to

establish the applicable standard of care." Estate of Chin v. St. Barnabas Medical Ctr., 160 N.J.

454, 469 (1999) (citing Schueler v. Strelinger, 43 N.J. 330, 345 (1964)).

   The doctrine of common knowledge is appropriately invoked only "where the common

knowledge and experience of ordinary lay persons would enable a jury to conclude without

expert testimony that a standard of care applied and was breached – that is, where 'the mistake

was obviously the result of negligence.'" Lucia v. Monmouth Medical Ctr., 341 N.J. Super. 95,

104 (App. Div. 2001) (citing Chin, 160 N.J. at 470). In other words, where the "carelessness of

the defendant is readily apparent to anyone of average intelligence and ordinary experience."

Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

   The Court concludes that the plaintiffs' first claim falls within the common knowledge

exception (that the paramedics negligently dropped the plaintiff while moving the stretcher), but

the plaintiffs' second claim does not (that the paramedics negligently supervised the EMTs in

moving the stretcher). The common knowledge doctrine is applicable to claims involving

ordinary negligence. See, e.g. Chin, 160 N.J. at 470 (holding that doctrine applied where patient

died from fatal embolism caused by incorrect hook-up of hysteroscope); Magner v. Beth Israel

Hosp., 120 N.J.Super. 529 (App. Div. 1972) (holding that doctrine applied where a spark from a

**NOT FOR PUBLICATION**

cauterizing tool ignited alcohol that had been applied to patient's skin and patient was burned in flash fire); Becker v. Eisenstodt, 60 N.J.Super. 240, 246-47 (App. Div. 1960) (holding that doctrine applied where rhinoplasty patient was severely burned by an instrument soaked in caustic liquid rather than anaesthetic solution); Steinke v. Bell, 32 N.J.Super. 67, 69-70 (App. Div. 1954) (holding that doctrine applied where dentist was supposed to remove patient's lower left molar only, but also removed her upper right lateral incisor). In a factually analogous case, Lauder v. Teaneck Ambulance Corps., the court held that expert testimony was not required when a paramedic failed to refasten a chest strap before the patient was removed from the ambulance, causing him to hit his head when the stretcher collapsed.  368 N.J. Super 320, 329-30 (App. Div. 2004).  Similarly, here, expert testimony is not required when it is alleged that the paramedics were active participants in moving the plaintiff on the stretcher and negligently allowed her to fall off when it tipped.  This claim involves simple negligence; expert testimony is not required.

On the other hand, expert testimony would be required for the plaintiffs' negligent supervision claim.  The paramedics' alleged mistake is not "obviously" the result of negligence. The average layperson would not know whether paramedics have a duty to supervise EMTs, or whether that duty was breached in this matter.  An affidavit of merit was required in order to establish the standard of care, and that the defendants' conduct "fell outside acceptable professional or occupational standards or treatment practices."  N.J.S.A. 2A:53A-27.  Without expert testimony, a jury could not reasonably conclude that the paramedics had a duty to supervise the EMTs, or that they were negligent in doing so.  Because no affidavit of merit was filed within 60 days of the filing of the answer, the plaintiffs' negligent supervision claim is dismissed.

NOT FOR PUBLICATION

## II.     Plaintiffs' Claim that the Paramedics Assisted in Moving the Stretcher

Because expert testimony is not required for plaintiffs' claim that the paramedics were moving the stretcher, and an affidavit of merit is not required, the Court addresses defendants' argument that they are entitled to summary judgment.  Plaintiffs allege that the paramedics actively assisted the EMTs in moving the stretcher to the ambulance.  The paramedics counter that they did not touch the stretcher until after Tentoni fell. At that point, they ran over to assist the EMTs in getting Tentoni back onto the stretcher and into the ambulance. The defendants testified that while the EMTs were moving Tentoni on the stretcher, they were engaged in other duties.  Kruk said that upon arriving, he immediately grabbed his equipment and went to the ambulance to set up his equipment and make contact with the receiving hospital.  (Df. Ex. T, Kruk Dep. pp. 39:1-2, 40:24-41:3.)  Walty said that he went to the accident scene, inspected the vehicle and spoke with a state trooper in order to gather information that might be useful in treating Tentoni.  (Df. Ex. S, Walty Dep. pp. 14:8-10, 18:23-19:9.)  The testimony of Ryan Tierney, one of the EMTs, supports this version of events.  His testimony indicated that only he and his partner were moving the stretcher when it fell.  (Df. Ex. U, Tierney Dep. pp. 45:22-48:17.)

However, the plaintiffs counter that there is evidence showing that Kruk and/or Walty may have been moving the stretcher with the EMTs.  The passenger in Jeffers' truck, Malcolm Salter, was one of the witnesses to the accident.  He testified that he thought he saw "approximately five" people moving the stretcher, but he did not identify Kruk or Walty specifically.  (Df. Ex. V, Salter Dep. p. 83:6-13.)  He also said that as far as he could tell, it was the EMTs and paramedics moving the stretcher (id. at p. 83:14-16), and that the people picking her up after she fell were the same people he saw moving her.  (Id. at p. 86:7-12.)  Also, one of

9

**NOT FOR PUBLICATION**

the State Troopers present testified that after he heard a bang, he immediately looked over and saw Tentoni face down on the ground.  (Con-Way Ex. J, Williams Dep. p. 56:13-24.)  There were "at least three" people standing near her, and they were "all ambulance personnel of some type."  (Id. at p. 67:1-14.)

These diverging versions of events create a genuine dispute of material fact. In deciding a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. Viewing the facts in a light most favorable to the plaintiff, there is evidence to permit a jury to find that the paramedics were involved in moving the stretcher.  Summary judgment is inappropriate now.

A)  *Qualified Good Faith Immunity*

Defendants argue that even if they participated in moving the stretcher, they are immune from liability under N.J.S.A. 26:2K-14.  This statute provides qualified good faith immunity to mobile intensive care unit paramedics.  N.J.S.A. 26:2K-14 provides that "[n]o mobile intensive care paramedic . . . shall be liable for any civil damages as the result of an act or the omission of an act committed . . . in the rendering of advanced life support services in good faith and in accordance with this act."  Alternatively, defendants argue that they are protected by N.J.S.A. 26:2K-29, which provides the same qualified immunity to EMTs.  They assert that transporting a patient on a stretcher is an EMT function.  If they are found to have assisted in moving Tentoni on the stretcher, than they were rendering basic life support services at the time and are protected.

The Court finds that defendants are not entitled to summary judgment on the issue of qualified good faith immunity.  Generally, "the question of 'good faith' presents a question of fact to be resolved at a plenary hearing."  Canico v. Hurtado, 144 N.J. 361, 365 (1996).  Further,

**NOT FOR PUBLICATION**

under New Jersey law, these statutes "only provide[ ] immunity for negligence in connection

with the actual rendering of life support services." DeTarquino v. City of Jersey City, 352

N.J.Super. 450, 452 (App. Div. 2002). In DeTarquino, the court found that "'the rendering of

intermediate life support services' d[id] not include the preparation of a report regarding those

services and the patient's condition." Id. at 457. Also, in Lauder, the court found that the trial

judge prematurely granted an EMT immunity where a loosened chest strap caused the patient to

fall and hit his head when the stretcher collapsed. 368 N.J. Super. at 329-30. The defendant

EMT had loosened the patient's chest strap in order to facilitate his breathing. Id. at 325.

However, he failed to refasten the strap before the patient was removed from the ambulance. Id.

The court said that a jury could find that this was "simple negligence unrelated to advanced life

support." Id. at 329. The court noted that there was "no evidence to indicate that the paramedic

was administering advanced life support when [the patient] was being removed from the

ambulance by squad members, or that [the patient's] condition upon arrival at the hospital was

such that the chest strap could not or should not have been refastened during his removal from

the ambulance." Id.

   Here, assuming that the paramedics participated in moving Tentoni on the stretcher to the

ambulance, there is no evidence to suggest that they were administering life support services at

the time. The defendants are correct that transporting a patient on a stretcher is an EMT duty.[4]

However, this does not mean that the defendants were "rendering basic life support services" at

the time, as those services are defined in N.J.S.A. 26:2K-21(b). In Lauder, the question was not

whether moving the stretcher itself constituted the rendering of life support services, but whether

_____

[4] N.J.A.C. 8:40-6.4(a)(5) and (a)(11) provide that "[t]he collective duties of the crewmembers
staffing a BLS ambulance shall include . . . [l]oading and unloading the patient from the vehicle"
and "assuring that all vehicle occupants (patients, passengers and crewmembers) are properly
restrained in accordance with N.J.A.C. 8:40-4.4(f)."

**NOT FOR PUBLICATION**

the EMT was rendering life support services *while* moving the stretcher.  Here, if the paramedics

assisted in moving the stretcher, the record does not indicate that they were rendering either

advanced or basic life support services while doing so.  Consequently, a jury could find that

allowing the stretcher to tip and Tentoni to fall constitutes simple negligence unrelated to

advanced or basic life support.


### III.	Burden of Apportioning Damages

The only expert reports that plaintiff has submitted regarding her injuries are those of her

treating doctors, and none of these attempt to apportion her injuries between the two accidents.

Con-Way has not offered such a report either.  Defendants argue that Tentoni has the burden of

proving her case, and this includes apportioning damages.  Because she cannot prove that being

dropped off of the stretcher caused her additional or worsened injuries, the claims against the

paramedics must be dismissed.  Plaintiffs argue that the burden of apportioning damages should

be shifted to the defendant.

As a general rule, it is the "plaintiff's burden to prove not only that defendant was

negligent, but also that defendant's negligence was a proximate cause of the injuries and

damages suffered." O'Brien (Newark) Cogeneration, Inc. v. Automatic Sprinkler Corp. of Am.,

361 N.J. Super. 264, 274 (App. Div. 2003) (citing Paxton v. Misiuk, 34 N.J. 453, 463 (1961)).

"Apportionment of damages based on causation has [long] been favored by courts in [New

Jersey]." Id.  (citing Poliseno v. Gen. Motors Corp., 328 N.J. Super. 41, 55 (App. Div. 2000)).

However, the courts have recognized that "it has not been easy to determine whether plaintiff or

defendant should bear the burden of damage apportionment in specific cases." Reichert v.

Vegholm, 366 N.J. Super. 209, 213 (App. Div. 2004).

**NOT FOR PUBLICATION**

There are two types of cases where the burden of apportioning damages can shift to the defendant. The first involve concurrent negligence producing a unitary harm. See O'Brien, 361 N.J. Super. at 276. This case does not fall into the first category, because the car accident and the stretcher accident were separate, successive incidents, each causing distinct harm. Courts have acknowledged that it is sometimes "difficult to discern a unitary harm" as distinguished from an incremental injury. Reichert, 366 N.J. Super. at 220. However, the Reichert court found that where the plaintiff was involved in two accidents about one month apart but suffered the same injuries to the same body parts, the injuries were not unitary but incremental because the injuries from the second accident were superimposed over the injuries from the first accident. Id. at 223. The court explained that "unitary injuries are those harms that by their nature are indivisible, such as quadriplegia, lung cancer, and death." Id. at 224. Similarly, here, Tentoni's injuries were incremental rather than indivisible. While the same parts of her body may have been injured in the fall from the stretcher as were injured in the car accident, this produced overlapping injuries rather than a unitary injury.

If the burden of apportioning damages is going to be shifted in this case, it must fall into the second category of cases. These cases, which derive from Fosgate v. Corona, 66 N.J. 268 (1974), are essentially a sub-category of aggravation cases. In a routine personal injury aggravation case, the plaintiff "must prove what damages a particular defendant caused." O'Brien, 361 N.J. Super. at 275 (citing Paxton, 34 N.J. at 463). If the plaintiff fails to carry this burden, the result "may be dismissal of plaintiff's case." Id. However, Fosgate recognizes the potential injustice of this rule in some situations, and permits the burden of proving apportionment of injuries to be shifted "to a knowledgeable defendant who had more expertise or better access to relevant apportionment proofs in order to avoid dismissal of the claims of a

**NOT FOR PUBLICATION**

completely innocent plaintiff who had clearly suffered some injury clearly caused by the

defendant." Id.  Under Fosgate, "where there is an aggravation of a pre-existing condition by

'malpractice or other tortious act' the innocent plaintiff is not required to establish what portions

of the eventual damages are attributable to each act." Bendar v. Rosen, 247 N.J.Super. 219, 232

(App. Div. 1991) (citing Fosgate, 66 N.J. at 272-73)).  This principle is not limited to malpractice

cases.  See Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 27-28 (App. Div. 1989);

Hoppe v. Ranzini, 158 N.J. Super. 158, 171 (App. Div. 1978).

Both rationales supporting the Fosgate rule are applicable in this case.  The first Fosgate

rationale is the "innocent plaintiff."  Defendants argue that the plaintiff is not innocent, and point

to the dispute of fact regarding the cause of the crash.  However, Tentoni was completely

innocent in the stretcher accident.  Also, viewing the facts in a light most favorable to the

plaintiff, she was innocent in the car accident as well.  There is no basis for the Court to conclude

that Tentoni is not an innocent plaintiff.

The second Fosgate rationale is the "knowledgeable defendant."  Here, the paramedic

defendants are more knowledgeable and better positioned to present apportionment proofs.  The

defendants argue that they are not better positioned, because they were nowhere near the

stretcher and were not in a position to "contrast or compare her damages at the time."  As

discussed, the only viable theory of liability remaining presupposes that the paramedics assisted

in moving the stretcher.  EMT Tierney testified that he assessed Tentoni after she fell off of the

stretcher, and "visibly examin[ed] her to see if anything looked different than before."  (St.

Clare's Ex. D to Supp. Brief, Tierney Dep. p. 79:1-6.)  If the paramedics assisted the EMTs in

moving the stretcher, then a jury could easily infer that they also saw her injuries before and after

the fall, and were able to assess whether there were any additional or worsened injuries.  On the

**NOT FOR PUBLICATION**

other hand, while the plaintiff was not unconscious, she has no recollection of the events taking

place on that day.  (St. Clare's Ex. O, Tentoni Dep. pp. 28:25-29:15.)  She is unable to

distinguish her injuries herself, and due to the close proximity of the accidents, her doctors were

only able to examine her after both accidents occurred.  The paramedics are also more

knowledgeable as medical professionals.  The New Jersey Supreme Court has recognized that

"[i]n the field of professional health care, given the difficulty of apportionment, sound public

policy requires that the professional bear the burden" of apportionment.  Ostrowski v. Azzara,

111 N.J. 429, 443-44 (1988).  Both Fosgate rationales apply, and the burden should be shifted to

defendants to apportion damages for the consideration of the trial fact finder.


**CONCLUSION**

Defendants' motion for summary judgment is granted in part and denied in part.




s/ William H. Walls
United States Senior District Judge


15