**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEATHER TENTONI,<br><br>        Plaintiff,<br><br>   v.<br><br>VINCENT E. JEFFERS and CON-WAY FREIGHT, INC., SAINT CLARE'S HEALTH SYSTEM MOBILE INTENSIVE CARE UNIT, DENNIS KRUK and KEVIN WALTY,<br><br>        Defendants,<br>and<br><br>VINCENT E. JEFFERS and CON-WAY TRANSPORTATION SERVICES, INC.,<br><br>        Third-Party Plaintiffs,<br>   v.<br><br>SAINT CLARE'S HEALTH SYSTEM MOBILE INTENSIVE CARE UNIT, DENNIS KRUK and KEVIN WALTY,<br><br>        Third-Party Defendants. | **OPINION**<br><br>Civ. No. 08-1976 (WHW) |

**Walls, Senior District Judge**

  Defendants Con-Way Freight, Inc. ("Con-Way") and Vincent Jeffers move to bar the testimony of plaintiff's accident reconstruction expert, Frank Ghiorsi, P.E., as a "net opinion."

**FACTUAL AND PROCEDURAL BACKGROUND**

  This case stems from a motor vehicle accident which occurred on September 20, 2005. Plaintiff Heather Tentoni was driving on Route 287 South when she was involved in a collision

1

**NOT FOR PUBLICATION**

with a tractor trailer driven by Vincent Jeffers and owned by Con-Way.  Ms. Tentoni has testified that she has no recollection of the accident.  (Df. Ex. F, Tentoni Dep.)  The parties dispute the sequence of events involved in the accident, but are in agreement as to how the accident began and ended.  The accident began when the plaintiff, who was driving in the left lane of the highway, began to veer left onto the shoulder.  She swerved to the right, entered the middle lane, then took another sharp turn to the left and struck the center guardrail.  (Pl. Ex. A, Ghiorsi Report.)  The parties also agree that, ultimately, Ms. Tentoni's vehicle was dragged under the tractor trailer, dislodged, and came to a stop with two wheels on the roadway and two wheels on the center concrete median.  (Df. Ex. G, Jeffers Dep.)  They dispute what occurred in the middle.

      The defendants assert that after striking the guardrail, the plaintiff's car did a 360-degree turn into the center lane.  (Df. Ex. G, Jeffers Dep.)  After completing the turn, Tentoni's vehicle began rolling backwards directly into the front of Jeffers' truck.  (Df. Ex. H, Salter Dep.)  Mr. Jeffers was driving in the center lane, and began pressing hard on his brakes.  However, he was unable to come to a stop before striking plaintiff's vehicle in the center lane.  He was also unable to move to his right or left because there were cars in those lanes.  The defendants' version of events relies upon the testimony of Mr. Jeffers and his passenger, Malcolm Salter, and the police report generated after the accident.

      The plaintiff's version, meanwhile, depends upon the report generated by her accident reconstruction expert, Frank Ghiorsi, P.E.  Mr. Ghiorsi concludes that after striking the guardrail, the plaintiff's car re-entered the roadway and veered right.  (Pl. Ex. A, Ghiorsi Report.)  Her car continued in this direction, braking as it went across the southbound lanes.  It had just entered the I-80 exit lane when it collided with an unidentified southbound vehicle.

**NOT FOR PUBLICATION**

(Id.) At impact, Ms. Tentoni's car was either stopped or going very slowly and the unidentified vehicle was likely traveling at highway speed. (Id.) The momentum from this impact caused the plaintiff's car to rotate counter clockwise, and it came to a rest facing south, straddling the right and center lanes. (Id.) Ms. Tentoni's car was mostly in the right lane when it was struck in the rear by Jeffers' truck. (Id.) Mr. Ghiorsi bases his analysis upon the police report, the deposition testimony of Jeffers, Slater and Christopher Williams (the trooper on the scene who generated the police report), Ms. Tentoni's medical records, and photographs of Ms. Tentoni's vehicle and the accident site.

## LEGAL STANDARD

The admissibility of expert testimony is a question of law governed by Rule 702 of the Federal Rules of Evidence and the United States Supreme Court's decision in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed R. Evid. 702. The Third Circuit has explained that the rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

Under New Jersey law, an "expert's bare conclusions, unsupported by factual evidence" are an inadmissible "net opinion." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). As the New Jersey Appellate Division explained:

> Under New Jersey law, an expert's opinion must be based on a proper factual foundation. In other words, 'expert testimony should not be

3

> received if it appears the witness is not in possession of such facts as will enable him [or her] to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. 'This prohibition against speculative expert opinion has been labeled by modern courts as the 'net opinion rule.' Under this doctrine, expert testimony is excluded if it is based merely on unfounded speculation and unquantified possibilities.

Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 323 (App. Div. 1996) (internal citations omitted). "The rule frequently focuses on the failure of the expert to explain a causal connection between the act complained of and the injury allegedly resulting therefrom." May v. Atlantic City Hilton, 128 F.Supp.2d 195, 198 (D.N.J. 2000).

However, "the 'net opinion' rule is neither an evidentiary rule under the Federal Rules of Evidence nor a factor in the Daubert analysis." Holman Enter. v. Fidelity & Guar. Ins. Co., 563 F. Supp. 2d 467, 472 n.12 (D.N.J. 2008). "[T]he net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence." Zeller v. J.C. Penney Co., No. 05-2546, 2008 WL 906350, at *7 n.13 (D.N.J. Mar. 31, 2008). "The net opinion rule requires the expert to give the 'why and wherefore' of the opinion, rather than a mere conclusion." Curtis v. Besam Group, No. 05-2807, 2008 WL 1732956, at *6 (D.N.J. Apr. 10, 2008). "Expert testimony, therefore, is unpermitted if it appears that the witness is unable to articulate a reasonably accurate conclusion, as distinguished from a mere guess or conjecture." Id.

## DISCUSSION

The defendants argue that Mr. Ghiorsi's report provides an impermissible net opinion. The defendants do not attack Mr. Ghiorsi's qualifications as an expert or his methodology. Their challenge is limited to the argument that "his opinion is based on facts which are not supported by the evidence." (Df. Br. at 8.) The plaintiff argues that the defendants' challenge

**NOT FOR PUBLICATION**

should have been brought under Federal Rule of Evidence 703 (rather than 702), but that under either Rule Mr. Ghiorsi's conclusions are factually supported.

The Court will assess the admissibility of Mr. Ghiorsi's testimony under Rule 702 and Daubert. Some courts in this District analyze "net opinion" challenges under the Daubert analysis, while others consider "net opinion" arguments separately and focus on whether the opinion will be of "assistance to the trier of fact." See West Am. Ins. Co. v. Jersey Cent. Power and Light Co., No. 03-6161, 2008 WL 5244232, at *7 (D.N.J. Dec. 15, 2008). This Court has adopted the approach that considers the "net opinion" principles as part of the Daubert analysis. Id. If Mr. Ghiorsi's opinions do not have a factual basis, as defendants contend, then the methodology he employed was either unreliable or did not fit the facts of the case, and would need to be struck. If Mr. Ghiorsi's opinions are grounded in fact, defendants' challenge is simply a disagreement with his conclusions and would be more properly made through cross-examination and presentation of contrary evidence.

The defendants argue that Mr. Ghiorsi's report is not based upon the factual record because his conclusions differ from those found in the police report and the testimony of Jeffers and Salter. As example, Mr. Ghiorsi opines that Ms. Tentoni's car veered to the right and came into contact with an unidentified vehicle. (Pl. Ex. A, Ghiorsi Report.) He also concludes that Ms. Tentoni's car was "straddling the right and center lanes, but was mostly in the right lane when it was struck in the rear" by Jeffers' truck. (Id.) The defendants argue that these opinions are based upon "conjecture" because "[n]either the police report, nor the deposition testimony of the only eyewitnesses, [Jeffers and Salter], describe plaintiff veering into the right side exit lane of I-80, or plaintiff's vehicle making contact with a phantom vehicle." (Df. Br. at 9.) The defendants also assert that "there was no testimony reflecting that the Tentoni vehicle was

**NOT FOR PUBLICATION**

straddling two lanes when it was struck, or that the Con-Way vehicle was straddling two lanes when it struck the Tentoni vehicle." (Df. Br. at 10.)

The Court finds that Mr. Ghiorsi's testimony is admissible. The defendants allege that Mr. Ghiorsi "ignores the eyewitness testimony and the physical evidence found by the responding police officers." (Df. Br. at 10.) But he does not – he just reaches different conclusions from them. Indeed, each of his conclusions is supported by evidence from the factual record which he examined. Mr. Ghiorsi's conclusion that the Tentoni vehicle veered to the right was based upon his analysis of tire marks, or "yaw marks," on the road.[1] His conclusion that she struck another vehicle was based upon his analysis of "side swipe damage" to the right side of plaintiff's car.[2] His conclusion that Ms. Tentoni's car was straddling two lanes when she was struck by Jeffers' truck was based upon his analysis of "scrub marks" and additional damage to her car (he notes in his report that his conclusion differs from the illustration in the police diagram).[3]

The defendants attempt to analogize this case to <u>Fedorczyk v. Caribbean Cruise Lines, Ltd.</u>, 82 F.3d 69 (3d Cir. 1996). That case arose from a slip-and-fall accident in a bathtub aboard a cruise ship. <u>Id.</u> at 72. The plaintiff alleged that Royal Caribbean's failure to provide adequate abrasive strips in its bathtub was the cause of her fall. <u>Id.</u> The plaintiff's expert

---

[1] Ghiorsi states: "V-1 [Tentoni's vehicle] then re-entered the roadway and veered right on the Littleton Road overpass leaving tire marks on the concrete road surface which were identified by the police as yaw marks. These marks are a result of a turning maneuver in which the turning radius is not compatible with the vehicle's travel speed causing the tires to slip sideways while they are rolling forward." (Pl. Ex. A, Ghiorsi Report.)
[2] Ghiorsi analyzed "side swipe damage to the front bumper from the right corner to the middle of the bumper," and concluded that Tentoni's car had "just entered the I-80 exit lane when it collided with an unidentified southbound vehicle. The unidentified vehicle had greater momentum in the southerly direction and applied a force across the front of V-1." (<u>Id.</u>)
[3] Ghiorsi states: "The location of V-1 when struck by V-2 [Jeffers' truck] was based on the location of the scrub mark in the police diagram. Although the police show the right side of V-1 over the scrub mark, the mark was made at impact by the left side, the side that was collapsed. There was no contact damage to the right rear and the right rear wheel was not misaligned as was the left rear wheel. In addition the pattern of impact damage to the rear of V-1 indicates that the principal direction of force was 6 o'clock, therefore, there were no lateral forces to the tires. This was not an angular rear end collision as illustrated in the police diagram." (<u>Id.</u>)

**NOT FOR PUBLICATION**

"testified that if there had been more stripping, it would be more likely that she would not have fallen." Id. at 75.  However, a portion of the tub had stripping and a portion did not; no evidence was presented that tended to prove that the plaintiff "was standing either on or off the stripping at the time she fell." Id.  The court found that it would be "speculative to conclude that the inadequate stripping caused [the plaintiff's] injuries when no evidence in the record indicate[d] where [she] was standing in the tub." Id.  Because the expert's conclusion was "based on pure speculation, rather than a reasonable inference," the court found that it was without foundation and inadmissible. Id.

Mr. Ghiorsi's opinions are distinguishable from those of the expert in Fedorczyk.  There, the expert assumed the existence of a fact - that the plaintiff was standing in between the stripping - and drew a conclusion from this "fact."  Here, Mr. Ghiorsi's opinions are grounded in facts in the record – "yaw marks" on the road, damage to Tentoni's car, etc. – and he draws conclusions from these facts.  He has not assumed anything.  To the contrary, he has done what experts do.  Mr. Ghiorsi's role, as an accident reconstruction expert, is to take facts and evidence in the record and draw independent conclusions from them.  Just because these conclusions are different from those reached by the police in their report does not make them speculative.  If the defendants disagree with Mr. Ghiorsi's conclusions, they are free to cross-examine him or present contrary evidence at trial for the benefit of, and evaluation by, the fact finder, the jury.

## CONCLUSION

The defendants' motion to bar the testimony of plaintiff's expert Frank Ghiorsi, P.E., is DENIED.

<u>s/ William H. Walls</u>
United States Senior District Judge